# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

=======================================

WALTER WOLICKI,

            *Plaintiff*,

      v.

PAPERWORKS INDUSTRIES, INC.,

            *Defendant*.

**COMPLAINT**

Case No.:  5:25-cv-403 (GTS/MJK)

JURY TRIAL DEMANDED

=======================================

Plaintiff, Walter Wolicki (hereafter "Plaintiff"), by and through his attorneys, Gattuso & Ciotoli, PLLC, for his Complaint against the above-captioned Defendant, PaperWorks Industries, Inc., states as follows:

## JURISDICTION

1.      This Court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. § 1367(a), as Plaintiff is asserting claims under the Americans with Disabilities Act (ADA) and the New York State Human Rights Law (NYSHRL).

2.      Plaintiff has exhausted his administrative remedies and received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"), dated on February 3, 2025. (Annexed hereto as Exhibit "A").

3.      This action was commenced within the time required by the EEOC's Notice of right-to-sue.

## PARTIES AND VENUE

4.      Plaintiff is a former employee of Defendant, and resides in Canastota, NY, located

1

in Madison County.

5.      Defendant, PaperWorks Industries, Inc. (hereafter "Defendant"), is a foreign business corporation formed under Delaware law, and is authorized to conduct business in New York State. Its headquarters is located at 40 Monument Road, Suite 200, Bala Cynwyd, PA 19004-1735.

6.      Defendant owns and operates a warehouse facility located in Baldwinsville, NY, Onondaga County.

7.      Venue for this action in the Northern District of New York under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of New York.

## PROCEDURAL HISTORY

8.      On/around September 1, 2023, Plaintiff filed a complaint against Defendant with the United States Equal Employment Opportunity Commission (Federal Charge No. 525-2023-01879) *pro se*, alleging disability discrimination.

9.      Plaintiff received a Right-to-Sue letter from the EEOC, dated February 3, 2025.

10.     This action was filed within 90 days of Plaintiff receiving the EEOC's Right to Sue letter.

## STATEMENT OF FACTS

**I.      Plaintiff's Disabilities and Employment with Defendant**

11.     Plaintiff is diagnosed with Post-Traumatic Stress Disorder (PTSD) and Degenerative Disk Disease.

12.     Plaintiff disclosed during the hiring process with Defendant that he was a veteran with disabilities.

2

13.     On March 13, 2023, Plaintiff received an offer of employment from Defendant to be a Production Manager at its facility in Baldwinsville, NY, which he accepted.

14.     Plaintiff's salary was $120,000.00, and he was eligible to participate in Defendant's Quarterly Incentive Plan, which was based on plant performance.

15.     Plaintiff's direct supervisor and boss was Mr. Jay Vaught, Plant Manager for Defendant's facility in Baldwinsville, NY.

16.     Plaintiff officially started working for Defendant on/around April 4, 2023.

17.     Plaintiff was originally hired to work as a Production Manager supporting the night shift operations.

18.     From the beginning of his employment, Plaintiff worked during the day shift in order to learn Defendant's operations and acclimate to the position. This was under the direction of Mr. Vaught.

19.     Plaintiff was advised by Defendant that he would work the day shift until Mr. Vaught made a decision on when Plaintiff would start working the night shift.

20.     After about a month into his employment, Plaintiff was still working the day shift under Mr. Vaught's orders. Plaintiff had not been asked or directed to work any night shifts by this point.

21.     During this time, Plaintiff advised Mr. Vaught that the night shift could potentially be difficult for him to work due to his PTSD and sleep issues. However, Plaintiff never stated to Defendant that he could not or would not work night shifts.

22.     Shortly thereafter, Plaintiff was advised by Mr. Vaught that he was no longer going to have Plaintiff work as a Night Shift Production Manager. Mr. Vaught stated that he no longer needed Plaintiff to fill that specific role going forward. Instead, Mr. Vaught told Plaintiff that his

plan was to build a management team for the day shift / 1st shift, which included having Plaintiff permanently assigned to the day shift.

23.    As a result of this change in Defendant's needs at the Baldwinsville facility, Defendant offered to change Plaintiff's position from Production Manager to Flexo Department Manager, which Plaintiff accepted. Plaintiff's compensation would remain the same. This decision came directly from Mr. Vaught and Defendant.

24.    To memorialize this change, Plaintiff and Mr. Vaught met with Defendant's Human Resources Department, and Plaintiff's signed a new position offer letter prepared by Defendant stating that his position and title were officially changed from Night Shift Production Manager to Flexo Department Manager. This new executed letter remained in Defendant's position.

25.    Mr. Vaught further acknowledged in text messages with Plaintiff that Plaintiff was "chosen to *fill an open Department Manager role which is by nature primarily a day shift Monday through Friday job* but can require odd hours and on call hours that could necessitate some occasional off hour work." (emphasis added).

26.    Plaintiff did work "odd hours" on multiple occasions when Defendant needed him too, such as starting a shift at 3:00 a.m. or other times outside his normal work hours.

27.    The Flexo Department Manager position did not have an essential function that expressly required Plaintiff to work night shifts.

28.    Plaintiff was never asked or ordered to work any night shifts during his employment with Defendant.

II.    **Plaintiff's Request for Workplace Accommodations**

29.    On/around July 12, 2024, Plaintiff submitted to Defendant a workplace

accommodation request through the United States Department of Veteran Affairs in connection
with his disabilities.

30.     The purpose of Plaintiff's accommodation request was to help alleviate and work
around some of the physical challenges his medical conditions were causing him while he was
performing his job.

31.     Specifically, Plaintiff requested:

    a.  A quiet office space;

    b.  A flexible work schedule not to exceed 8 hours a day;

    c.  A flexible work environment; and

    d.  Leave to work remotely from home as needed, or take time off as needed, when
       his medical conditions are exacerbated.

32.     At the time he submitted his accommodation requests, Plaintiff's official position
was Flexo Department Manager at Defendant's facility in Baldwinsville, NY.

33.     None of Plaintiff's accommodation requests mentioned any refusal or inability to
work night shifts for any reason.

34.     As of this time, Plaintiff had been able to successfully perform all the essential
functions of his position, Flexo Department Manager, without having a formal accommodation in
place.

35.     Plaintiff had never received any notices or negative feedback from Defendant that
indicated he was failing to satisfy any work performance expectations or essential functions.

36.     Prior to submitting his formal accommodation requests, Plaintiff had been
permitted by Mr. Vaught to work on a flexible schedule as needed. Specifically, if Plaintiff's
disabilities were exacerbated on a given day, Mr. Vaught would permit Plaintiff to arrive for work
or leave work at different times outside his normal hours, or if needed. Mr. Vaught would also

allow Plaintiff to arrive earlier or stay later than normal in order to make up for any lost time from previous days.

37.    When Plaintiff originally asked Mr. Vaught if this flexible work schedule arrangement was acceptable, Mr. Vaught replied "Yes, by all means. We can accommodate."

38.    Plaintiff being allowed to work a flexible schedule as needed with Mr. Vaught's expressed consent did not cause any undue hardship for Defendant.

39.    Plaintiff never worked remotely at any point during his employment with Defendant. He always worked every one of his shifts in person at Defendant's facility in Baldwinsville, NY.

40.    On July 25, 2023, Defendant received a completed physician certification form in connection with Plaintiff's accommodation requests but required further clarification and information from Plaintiff's Primary Care Physician.

41.    On August 17, 2023, Defendant's Senior Human Resources Business Partner, Ms. Jennifer Buck, sent a letter to Plaintiff's physician at the VA, identifying what Defendant needed clarification on for Plaintiff's work accommodation requests.

42.    Defendant also sent a letter to Plaintiff on August 17, 2023, signed by Ms. Buck, indicating that Defendant had not received a response from his physician yet, and encouraged Plaintiff to help Defendant obtain the information needed.

43.    Defendant's letter to Plaintiff, dated August 17, 2023, marked the first time Defendant had contacted Plaintiff at all in connection with his accommodation requests.

44.    Importantly, Ms. Buck's letter to Plaintiff claimed, "that the essential duties of [Plaintiff's] job require that [he] work the Night Shift…," and asked if there are any other accommodations that he could propose.

45.    Ms. Buck's assertion that Plaintiff's essential functions required him to work the Night Shift was wrong. Plaintiff's official position at the time, Flexo Department Manager for Defendant's Baldwinsville facility, did not require him to work the night shift.

46.    Defendant and Ms. Buck knew, or should have known, that Plaintiff's position had been officially changed from Night Shift Production Manager to Flexo Department Manager prior to when he submitted his work accommodation requests.

47.    In her letter, Ms. Buck unilaterally set a deadline of August 23, 2023, to receive the supplemental information Defendant was requesting from Plaintiff's physician. Ms. Buck's letter stated that if they did not receive any further information from Plaintiff's physician by that date, then Defendant would make a determination on his accommodation requests based on the information they had as of that time.

48.    Plaintiff's doctors at the VA received a fax from Defendant on/around August 18, 2023, "listing questions needing clarification about recent work restriction paperwork signed by PCP."

49.    On August 18, 2023, at 9:04 AM, RN Linda Parker at the VA called and spoke with Ms. Buck, advising her that they did not receive a copy of Defendant's work form. It was requested that Ms. Buck fax the form back to them, which Ms. Buck replied that she would.

50.    On August 25, 2023, at 6:14am, Plaintiff sent an e-mail to Ms. Buck, and cc'd Mr. Vaught. In his e-mail, Plaintiff apologized for the late response regarding his accommodation requests and advised that he had reached out to his physician's office. Plaintiff also provided further clarification and amendments to his pending accommodation requests. Specifically, Plaintiff stated:

> In regards to the accommodation status letter that I received from you on August 17th, 2023, the request to work remotely would be

on an as needed basis which would require prior approval from my manager Jay Vaught. The letter also states that my job requires me to work night shift, which is a little confusing because I am currently on day shift, if for any reason I am needed to go to night shift I can accommodate that. The letter also asked if I proposed any other accommodations, the only accommodation I am requesting at this time is to have a flexible work schedule which Jay Vaught has agreed to and has been supportive of.

Please let me know if you require any additional information regarding my disability status.

51.    As of August 25, 2023, Plaintiff had not received any notice of a final determination by Defendant regarding his work accommodation requests or any changes to his employment status.

52.    On August 25, 2023, at 2:11pm, MSA Patricia Kenny from the VA attempted to call Ms. Buck, and left a voice message informing her that they needed a fax number for Defendant in order to send back the requested accommodation forms that had been completed by Plaintiff's medical care provider.

53.    Upon information and belief, Ms. Buck never responded to the voice message left by Plaintiff's physician's office on August 25, 2023. As a result, Defendant did not receive the supplemental information and documents from Plaintiff's physician's office.

54.    Throughout this period of time, Plaintiff continued to successfully perform all the essential functions of his position as Flexo Department Manager, which Defendant was aware of.

**III.    Defendant Terminates Plaintiff After Denying Accommodation Requests**

55.    On August 28, 2023, Defendant made the subjective determination that Plaintiff was not capable of performing the essential duties of his job, with or without an accommodation.

56.    Plaintiff received a letter of termination from Defendant, dated August 28, 2023, signed by Ms. Jennifer Buck.

57.     In the termination letter, Ms. Buck first emphasizes the point that Plaintiff "continued to seek to work remotely on an 'as needed basis,'" and that his position requires him to "be present to supervise the workforce."

58.     Next, Ms. Buck incorrectly claims that Plaintiff was still working as a Night Shift Production Manager, thus requiring him to work the night shift. Ms. Buck further claimed that Plaintiff allegedly indicated back in July 2023 that he could not work the Night Shift at all due to a medical condition.

59.     Plaintiff's workplace accommodation requests that were being decided on made no reference to or request in connection with working the night shift, since working the night shift was not an essential function of Plaintiff's current position.

60.     At the conclusion of the letter, Ms. Buck states:

> Based on the information we have, and given that the essential duties of your job require that you work the Night Shift, and be in person to manage other employees, we have determined that you are unable to conduct the essential duties of your job with or without an accommodation. As a result, your employment is terminated effective today, August 28, 2023.

> (emphasis added)

61.     Defendant's termination letter does not cite to any other accommodation requests made by Plaintiff or grounds justifying termination.

62.     When Plaintiff later contacted Mr. Vaught about his termination, Plaintiff questioned Mr. Vaught about the issues pertaining to the night shift since he was not a Night Shift Production Manager, and Mr. Vaught had expressly stated to Plaintiff early on in his employment that "there was no need for a night shift manager" anymore at the facility where he worked. Mr. Vaught acknowledged that he was "not real sure what the significance of the night shift would have been" in connection with Ms. Buck's determination.

9

63.    Upon information and belief, before deciding to terminate his employment, Defendant never spoke to Mr. Vaught or any other credible witness about Plaintiff's then-current position, his accommodation requests, or his ability to perform his job functions with or without an accommodation.

64.    Through either gross negligence or intentional maliciousness, Defendant wrongfully assessed and rendered a subjective decision that Plaintiff could not perform his job with or without accommodations by citing essential functions for a position that Plaintiff was no longer assigned to, and misconstruing the accommodation requests he had made.

65.    Defendant wrongfully claimed that Plaintiff was still working as a Night Shift Production Manager at the time it decided to terminate him, when he had transitioned to a Flexo Department Manager position months ago under the direction and orders of Plant Manager Jay Vaught.

66.    As a Flexo Department Manager, there was no essential function expressly requiring Plaintiff to work night shifts.

67.    Plaintiff's work accommodation requests do not request or assert that he cannot work night shifts.

68.    Plaintiff never represented to Defendant that he could not or would not work night shifts if asked to do so and reiterated this in his e-mail to Ms. Buck on August 25, 2023.

69.    In regard to working remotely, Plaintiff merely requested as an accommodation the opportunity to work remotely if ever needed when his medical conditions were exacerbated.

70.    Even when making the request to work remotely as needed, Plaintiff had always performed his job without working remotely, and could still do so going forward if required by Defendant.

71.     Upon information and belief, Defendant wrongfully construed Plaintiff's request to work remotely as needed as an outright inability by him to perform his job in person at Defendant's facility.

72.     Per Plaintiff's e-mail to Ms. Buck on August 25, 2023, sent days prior to issuing the termination letter, the only accommodation that Plaintiff truly wanted was to formally memorialize that he could work a flexible work schedule, just as he had been doing informally with Mr. Vaught's direct approval up to that point.

73.     In Plaintiff's termination letter, Ms. Buck clearly infers that such accommodation is acceptable, stating:

> With regards to your reference to a conversation with your manager about an already existing flexible schedule, that mean that there were certain days where you work longer hours than expected, and at times you are then allowed to work a shorter time period the following day. *Beyond that, there can be no other flexibility* in your work schedule…

(emphasis added)

74.     Plaintiff had been successfully performing his job as Flexo Department Manager for months without having a formal accommodation in place.

75.     Defendant's General Manager of the Baldwinsville facility, Jason Watts, acknowledged in text messages to Plaintiff following his termination that he was doing a great job, stating to Plaintiff, "You were killing it too. Making a huge difference for us."

76.     Defendant knew that Plaintiff could still perform his job with or without any workplace accommodations.

77.     Defendant had no medical evidence or reason to determine that Plaintiff could not perform the essential functions of his job with or without an accommodation.

78.    Defendant wrongfully terminated Plaintiff's employment despite him still being able to perform his essential job functions with or without a reasonable accommodation.

## FIRST CAUSES OF ACTION

## DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

79.    Plaintiff hereby incorporates paragraphs "1" through "78" inclusive, as if fully set forth herein.

80.    At all relevant times, under the Americans with Disabilities Act (ADA), Defendant was a covered employer, and Plaintiff was an employee and a qualified individual with a disability.

81.    Title I of the ADA prohibits discrimination against a qualified individual on the basis of disability, or a perceived disability, in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.    42 U.S.C. § 12112(a).    Defendant violated this prohibition by:

    i.    Terminating Plaintiff's employment based on perceived limitations from his disabilities, despite the fact that he could still perform the essential functions of his job with or without an accommodation.

    ii.    Wrongfully assessing Plaintiff's ability to perform the essential functions of his job by intentionally, or negligently, citing to the essential functions of an incorrect position that Plaintiff did not work at the time he submitted his accommodation requests or when Defendant decided to terminate his employment.

    iii.    Failing to account for new information and amendments by Plaintiff to his accommodation requests that were provided days prior to Defendant deciding to terminate his employment based on an erroneous belief that he could not perform his job with or without an accommodation.

82.    An employee can request work accommodations even if they can still perform the job without them, as reasonable accommodations are not limited to just enabling an employee to perform essential job functions.

83.     Terminating an employee after denying an accommodation request and believing they cannot perform the essential functions of their job constitutes disability discrimination if the employee could in fact perform the essential functions of the job with or without a reasonable accommodation.

84.     Defendant terminated Plaintiff after denying his work accommodation requests and subjectively believing without evidence that he could not perform the essential functions of the job he actually held at the time.

85.     Plaintiff had been capable, and was still fully capable, of successfully performing the essential functions of his job with or without accommodations.

86.     Defendant's conduct has adversely affected Plaintiff's opportunities and status because they terminated his employment based on erroneous assumptions about his disabilities and relied on an incorrect job and essential functions that Plaintiff was not responsible for.

87.     Defendant's conduct caused Plaintiffs substantial economic damages, including but not limited to loss of earnings, loss of benefits, and loss of career opportunities, along with compensatory damages for emotional distress and mental anguish. Because it acted with malice or with reckless indifference towards Plaintiffs and his rights under the ADA, they are also liable for punitive damages. Finally, Defendant is liable for the court costs, reasonable attorneys' fees, and expenses Plaintiff has incurred in the prosecution of this matter.

SECOND CAUSE OF ACTION

**FAILURE TO ENGAGE IN INTERACTIVE PROCESS WITH EMPLOYEE UNDER THE NEW YORK STATE HUMAN RIGHTS LAW**

88.     Plaintiff hereby incorporates paragraphs "1" through "87" inclusive, as if fully set forth herein.

89.     The New York State Human Rights Law (NYSHRL) requires all private employers

to provide reasonable work accommodations to eligible employees with disabilities, provided that such accommodations do not impose an undue hardship on the employer.

90.     At all relevant times, Defendant is an employer as defined under the NYSHRL, and Plaintiff was an employee and qualified individual with a disability as defined under the NYSHRL.

91.     Under the NYSHRL, an employer is legally obligated to engage in a good faith interactive process with the employee at issue that assesses the viability and needs of the disabled employee, and the reasonableness of the accommodation(s) requested. An employer's failure to engage in this good faith interactive process is itself a violation of law.

92.     Plaintiff made a request for workplace accommodations to help alleviate certain physical challenges he faced due to his medical disabilities.

93.     Even though he requested workplace accommodations, Plaintiff was still physically capable of performing all essential functions of his position with or without an accommodation.

94.     Defendant did not engage in a good faith individualized interactive process with Plaintiff. Defendant failed to satisfy this obligation because:

i.      Defendant failed to properly provide Plaintiff's primary care physician with the necessary forms it asked to be completed in connection with his accommodation requests.

ii.     Defendant failed to timely respond to Plaintiff's physician's office's request for proper contact information in order to timely submit the information Defendant requested for.

iii.    Defendant failed to meet with Plaintiff at all to discuss about his accommodations requests, confirm what the essential functions of his correct position actually were, or his ability to perform the essential functions of his job without an accommodation.

iv.     Defendant failed to speak with Mr. Vaught or any other credible witness about Plaintiff's then-current position, his accommodation requests, or his ability to perform his job functions with or without an accommodation.

  v.  Defendant failed to properly account for the information provided by Plaintiff in his e-mail on August 25, 2025, submitted days before Defendant's decision, clarifying the basis for his request to work remotely as needed and the amendment that the only accommodation he was now seeking was to formally memorialize a flexible work schedule, as had been in place between him and his Plant Manager Jay Vaught.

95.  Defendant made the decision to terminate Plaintiff's employment based on the subjective belief that he could not perform his job with or without a workplace accommodation, while erroneously citing to the essential functions of an incorrect position that Plaintiff did not work at the time he submitted his accommodation requests or when Defendant decided to terminate his employment

96.  Defendant's decision to terminate Plaintiff was made despite there being clear evidence that Plaintiff had been successfully performing all the essential functions of his job as Flexo-Department Manager.

97.  Defendant had not acquired any genuine evidence of its own in support of its determination that Plaintiff could not perform the essential functions of the job he actually held either with or without accommodation.

98.  Defendant's actions were intentional, willful, and made in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

99.  Defendant's conduct caused Plaintiffs substantial economic damages, including but not limited to loss of earnings, loss of benefits, and loss of career opportunities, along with compensatory damages for emotional distress and mental anguish. Because it acted with malice or with reckless indifference towards Plaintiffs and his rights under the NYSHRL, they are also liable for punitive damages. Finally, Defendant is liable for the court costs, reasonable attorneys' fees, and expenses Plaintiff has incurred in the prosecution of this matter.

## THIRD CAUSE OF ACTION

## DISABILITY DISCRIMINATION UNDER THE
## NEW YORK STATE HUMAN RIGHTS LAW

100.    Plaintiff hereby incorporates paragraphs "1" through "100" inclusive, as if fully set forth herein.

101.    The New York State Human Rights Law (NYSHRL) requires private employers to provide reasonable work accommodations to eligible employees with disabilities, provided that such accommodation does not impose an undue hardship on the employer.

102.    The NYSHRL prohibits covered employers from discriminating against employees based upon an individual's past, current, or perceived disability. Failure to provide reasonable accommodation to an employee's known disability, and terminating an employee who is able to perform his/her essential job functions with or without reasonable accommodation is a recognized form of discrimination under the NYSHRL.

103.    Plaintiff made a request for workplace accommodations to help alleviate certain physical challenges he faced due to his medical disabilities.

104.    Even though he requested workplace accommodations, Plaintiff was still physically capable of performing all essential functions of his position with or without an accommodation.

105.    Defendant erroneously assessed Plaintiff's ability to perform the essential functions of his job by intentionally or negligently citing to an incorrect position that Plaintiff did not work at the time he submitted his accommodation requests or when Defendant decided to terminate his employment

106.    Defendant also failed to account for new clarifying information and amendments by Plaintiff to his accommodation requests that were provided days prior to Defendant deciding to

terminate his employment based on an erroneous belief that he could not perform his job with or without an accommodation.

107.    Defendant terminated Plaintiff's employment based on perceived limitations from his disabilities, despite the fact that he could still perform the essential functions of his job with or without reasonable accommodation.

108.    Because of his disabilities, and without any evidence that Plaintiff could not perform the essential job functions of his actual job with or without a workplace accommodation, Defendant terminated Plaintiff's employment.

109.    Defendant's actions were intentional, willful, and made in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

110.    Plaintiff has suffered damages as a result of Defendant's unlawful actions, including but not limited to loss of earnings; loss of benefits; loss of career opportunities; mental anguish; and emotional distress. Because it acted with malice or with reckless indifference towards Plaintiffs and his rights under the NYSHRL, Defendant is also liable for punitive damages. Finally, Defendant is liable for the court costs, reasonable attorneys' fees, and expenses Plaintiff has incurred in the prosecution of this matter.

**DEMAND FOR TRIAL BY JURY**

111.    Pursuant to the Fed. R. Civ. P. 38, Plaintiff respectfully demands a trial by jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an award of damages in his favor in a sum to be determined according to proof and as provided by law, plus attorneys' fees, costs and disbursements incurred in prosecuting this action, and such other and further relief as the court may deem just and proper.

17

Dated: April 1, 2025

/s/ _Ryan G. Files_
Ryan G. Files, Esq.
Bar Roll #: 702255
GATTUSO & CIOTOLI, PLLC
The White House
7030 E. Genesee Street
Fayetteville, New York 13066
Phone: 315-314-8000
Fax: 315-446-7521 (fax)
rfiles@gclawoffice.com